# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

***

| | |
|---|---|
| CYNTHIA L. CRANMER,<br><br>             Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>             Defendant. | 2:13-00756-JCM-VCF<br><br>**<u>REPORT & RECOMMENDATION</u>** |

This matter involves Plaintiff Cynthia L. Cranmer's appeal from Defendant Carolyn W. Colvin's final decision denying Cranmer social security benefits. Before the court is Cranmer's motion to reverse or remand (#16). Colvin filed an opposition (#21); and Cranmer replied (#24).

## BACKGROUND

On February 11, 2010, Plaintiff Cynthia L. Cranmer filed her application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. §§ 416,423. (*See* Admin. Rec. at 134). Cranmer's application was denied initially and upon reconsideration. (*See* Admin. Rec. at 93-95, 105-08). On September 22, 2011, Cranmer and her attorney appeared for a hearing before Administrative Law Judge ("ALJ") Norman L. Bennett. (*Id.* at 26). The ALJ issued an unfavorable decision against Cranmer on October 5, 2011, finding that Cranmer's medical impairments did not individually, or in combination, meet the requirements for disability as defined by the Social Security Act. (*Id.*). Cranmer subsequently filed a timely appeal to the ALJ's decision. (*See* Admin. Rec. at 18). The Appeals Counsel denied Cranmer's request for review on March 8, 2013, making the ALJ's decision a final decision of the Commissioner of Social Security. (*Id.* at 4). On May 1, 2013, Cranmer commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (#1).

**STANDARD OF REVIEW**

The Fifth Amendment to the Constitution protects the citizenry from the deprivation of property by the government without due process of the law. U.S. Const. amend. V. Applicants for social security disability benefits have a constitutionally protected property interest in those benefits. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). When, as here, the Commissioner of Social Security renders a final decision denying a claimant benefits, the Social Security Act provides the District Court appellate jurisdiction to review the Commissioner's decision. *See* 42 U.S.C. § 405(g); *see also* 28 U.S.C. § 636(b) (permitting the District Court to refer matters to a U.S. Magistrate Judge).

The Social Security Act limits the District Court's review of final decisions rendered by the Commissioner of Social Security. *See* 42 U.S.C. § 405(g). The court must review the Commissioner's decision to determine if (1) the Commissioner has applied the proper legal standards, and (2) the Commissioner's decision was supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The court may set aside a decision by the Commissioner denying benefits only if the decision is not supported by substantial evidence, or the decision is based on legal error. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Substantial evidence is defined by the court as being "more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005) (*quoting Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)) *see also Batson*, 359 F.3d 1193. The court reviews the administrative record as a whole. *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).

The matter before the court is, therefore, not whether the court would have reached a different conclusion, but whether the Commissioner's decision was based on enough evidence from the record to

support the conclusion. *Batson*, 359 F.3d at 1193 (defining "substantial evidence"). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## DISCUSSION

Cranmer challenges the Commissioner's final decision on three grounds. However, prior to addressing Cranmer's arguments the court first discusses the statutory framework from which Cranmer's allegations arise.

### A.    *The Statutory Framework*

President Roosevelt enacted the Social Security Act of 1935 in order "to provide for the general welfare." 79 Cong. Rec. 12793 (1935) (excerpt from Conference Report-Social Security H.R. 7260). The Act furthers "the Nation's basic commitment . . . to foster the dignity and well-being of all persons within its borders," and recognizes that "forces not within the control of the poor contribute to their poverty." *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970). "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 2290, 96 L. Ed. 2d 119 (1987).

The claimant bears the initial burden of establishing that they have a disability within the meaning of the Social Security Act in order to qualify for disability benefits. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy,

regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

The Secretary of Social Security "has established a five-step sequential evaluation process for determining whether a person is disabled." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

The five-step process is as follows. First, the claimant must show that she is not currently engaged in a substantially gainful activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is, then disability benefits are denied. *Id.* Second, the claimant must prove she has a severe medical impairment, or combination of impairments, that "significantly limits her physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also Yuckert*, 482 U.S. at 141. "The ability to do basic work activities is defined as 'abilities and aptitudes to do most jobs.'" *Yuckert*, 482 U.S. at 141. Third, the claimant must be disabled. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d) 416.925, 416.926. Disability is determined in one of two ways. If the claimant can demonstrate that her impairment(s) meet or equal a listed impairment in the social security regulations at 20 C.F.R. Part 404, Subpart P, App. 1, the claimant is presumed disabled without considering age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). Otherwise, if a claimant's impairment(s) do not meet or equal a listed impairment, a residual functional capacity assessment will be conducted to determine what your physical and mental limitations are in a work setting. *See* 404.1520(e), 416.920(e).

The residual functional capacity assessment (RFC) is a function-by-function examination of a claimant's ability to perform the physical and mental demands of work-related activities on a "regular and continuing basis" despite limitations from impairments. SSR 96-8p. The standard for "regular and continuing basis" is measured by an eight hour a day, five day a week work schedule. *Id.* The RFC is used to determine "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a). The RFC tests a claimant's physical, mental, and other abilities affected by the claimant's

impairments. 20 C.F.R. § 404.1545(b). All relevant medical evidence from the record will be used to determine a claimant's RFC, including evidence of impairments that are not determined to be severe. 20 C.F.R. § 404.1545(a). The totality of all medical and non-medical evidence relating to a claimant's impairment(s) will be assessed to determine the "total limiting effects" of both severe and non-severe impairments. 20 C.F.R. § 404.1545(e).

Once the assessment has concluded, the results will be used to determine what job exertion category the claimant can perform. 20 C.F.R. § 404.1567. There are five job exertion categories: (1) sedentary, (2) light, (3) medium, (4) heavy, and (5) very heavy. *Id.* The RFC, and subsequent job exertion category certification are then used to determine if the claimant satisfies the final two steps of the five-step evaluation process. 20 C.F.R. §§ 404.1545(a)(i), 404.1545(a)(ii).

The fourth step of the process requires the claimant to prove that her impairment(s) prevent her from performing the physical and mental demands of her past relevant work. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). The RFC will be used to determine if the claimant can in fact perform their past relevant work, based on what job exertion category that job is classified under. *See* 20 C.F.R. § 404.1545; 20 C.F.R. § 404.1545. A claimant will pass step four only if their RFC limits their job exertion to a category lower than the exertion level required to perform their past relevant work. *Id.*

If the claimant satisfies her burden under the previous four steps, the burden then shifts to the Commissioner to prove that the claimant is capable of performing some other substantially gainful work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(g); *Yuckert*, 482 U.S. at 145. The claimant's residual functional capacity, age, education, and past work experience, are all factors considered to determine if a claimant is capable of performing some other work in the national economy. *Id.* If the Commissioner proves that a claimant can perform some other suitable work, the claimant is given a chance to rebut by showing she is, in fact, unable to perform that work. *Id.*

The social security disability claim process begins with an initial disability determination by a state agency acting under the authority of the Secretary of Social Security. *See* 42 U.S.C. §§ 421(a), 1383b(a); 20 CFR §§ 404.1503, 416.903 (1986); *see also Yuckert*, 482 U.S. at 142. If the state agency denies the claim, the claimant may subsequently appeal the decision through a three-step administrative review process. *Yuckert*, 482 U.S. at 142. First, the state agency will reconsider the claim *de novo*. *See* 20 C.F.R. §§ 404.909(a), 416.1409(a); *see also Yuckert*, 482 U.S. at 142. Second, the claimant will appear for hearing conducted by an administrative law judge (ALJ) within the Bureau of Hearings and Appeals of the Social Security Administration. *See* 42 U.S.C. §§ 405(b)(1), 1383(c)(1) (1982 ed. and Supp. III); 20 CFR §§ 404.929, 416.1429, 422.201 et seq. (1986); *see also Yuckert*, 482 U.S. at 142. Third, a claimant is entitled to seek review by the Appeals Council of the Social Security Administration. *See* 20 CFR §§ 404.967 et seq., 416.1467 et seq. (1986); *see also Yuckert*, 482 U.S. at 142.

Once a claimant exhausts all three administrative remedies, she may seek review in federal district court. *See* 42 U.S.C. 405(g); *see also Yuckert*, 482 U.S. at 142. However, the District Court's review of final decisions rendered by the Commissioner of Social Security is limited. *See* 42 U.S.C. § 405(g). The court must review the Commissioner's decision to determine if (1) the Commissioner has applied the proper legal standards, and (2) the Commissioner's decision was supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

**B.      *The ALJ's Decision is Supported by Substantial Evidence***

Cranmer disputes the Commissioner's findings for three reasons. First, Cranmer argues that the ALJ erred in rejecting the Multiple Impairment Questionnaire of treating internist Dr. Gerardo Lorenzana, as well as substantial portions of the assessment of consultative internist Dr. Wenceslao Cabaluna. (Mot. For Reversal (#16)). Second, Cranmer alleges that the ALJ erred in finding that Cranmer's claim failed at step four of the five step process because Cranmer is unable to perform her

past relevant work. (*Id.*). Third, Cranmer claims that the ALJ improperly discredited her testimony. (*Id.*). For the reasons below, the court finds that the ALJ's decision regarding Cranmer's RFC is supported by substantial evidence.

1. **The ALJ's Interpretation of Treating Internist Lorenzana's Assessment of Cranmer's Impairments is Supported by Substantial Evidence.**

Cranmer alleges that the ALJ's determination of her RFC is not supported by substantial evidence because the ALJ rejected treating internist Lorenzana's assessments, and significant portions of consultative internist Cabuluna's assessments of Cranmer's limitations. (Mot. For Reversal (#16) at 1). In response, the Commissioner argues that the ALJ correctly determined Cranmer's RFC by properly weighing the medical evidence. (Def.'s Opp'n (#21) at 3). The court agrees.

On June 11, 2010, treating internist Dr. Gerardo Lorenzana completed a Multiple Impairment Questionnaire in which he diagnosed Ms. Cranmer with rheumatoid arthritis, chronic back pain, and anxiety/panic disorder. (Mot. for Review (#16) at 5). Part of Dr. Lorenzana's report includes a chart that indicates how many hours Dr. Lorenzana believes Cranmer can sit, stand, and walk in an eight hour day. (Admin. Rec. at 301). Dr. Lorenzana determined that Ms. Cranmer can: (1) sit for only one hour in an eight hour workday; (2) stand or walk for less than one hour in an eight-hour workday; (3) can lift up to 10 pounds occasionally; and (4) can carry up to five pounds occasionally. (*Id.*). Furthermore, Dr. Lorenzana found that Cranmer's impairments prohibit her from handling even low stress work, supporting his conclusion with the fact that Cranmer must take anxiety medication to leave her home. (*Id.*).

Standing alone, this evidence cannot overturn the ALJ's decision. Though a treating physician's opinion is typically given greater weight in disability cases it is not binding on the Commissioner or the ALJ. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). "It is clear that it is

7

the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity," and ultimately determine disability. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Here, the ALJ's decision to reject Dr. Lorenzana's opinion regarding Cranmer's residual functional capacity is supported by substantial evidence for four reasons; (1) Cranmer's diagnostic test results contradict Dr. Lorenzana's findings; (2) the conclusions of Drs. Cabaluna, Wilson, and Karelitz contradict Dr. Lorenzana's assessment; (3) Dr. Lorenzana does not substantiate his conclusions with objective evidence within the record; and (4) Cranmer's Mental Residual Functional Capacity assessment indicates that she is not seriously limited by her psychological impairments.

i.     *Cranmer's medical diagnostic test results contradict Dr. Lorenzana's assessment of Cranmer's functional capacity*

First, Cranmer's rheumatoid arthritis factor, sedimentation rate, and bone density test results contradict Dr. Lorenzana's functional capacity assessment. On June 4, 2010, Cranmer underwent testing for mineral bone density. (Admin. Rec. at 283). The bone density test is used to detect decreases in bone density and osteoporosis. (*See* Admin. Rec. at 283). A patient's T-score is used to determine how much the patient's bone density deviates from the mean value for a normal person of the same age. (*Id.*). For instance, a score of -1 or less indicates that the person is within 1 standard deviation from the mean peak bone mass for her age, and thus within normal limits. (*Id.*). A score greater than -1 but less than -2.5 indicates that a person has osteopenia, and a score of greater than -2.5 indicates osteoporosis. (*Id.*). Cranmer's bone density report showed that her T-score for the mineral bone density in her back was -0.50, well within the normal range. (*Id.*). While the bone density report does not eliminate the possibility of other factors that may contribute to Cranmer's chronic back pain, it does, however, indicate that Ms. Cranmer's does not suffer from a bone density related illness affecting her back.

Cranmer also underwent testing for rheumatoid arthritis factor, and sedimentation rate. (Admin. Rec. at 298). The rheumatoid arthritis factor test detects proteins produced by the immune system that tend to indicate a patient is suffering from an auto-immune disease such as rheumatoid arthritis. The

normal range for the rheumatoid arthritis factor test is between 0 and 13.9. (*Id.*). The sedimentation rate tests for an inflammatory response by a patient's immune system. (*Id.*). A high sedimentation rate score may also indicate that a patient has rheumatoid arthritis. (*Id.*). Both Cranmer's test results came back negative. (*Id.*). Cranmer's sedimentation rate was 9, well within the normal range of 0-20, and her rheumatoid arthritis factor was 8.8, within the normal range of 0-13.9. (*Id.*). While the rheumatoid arthritis factor, and sedimentation rate tests are only diagnostic tools to help doctors identify whether a patient may have rheumatoid arthritis, the results could lead a rational mind to come to the conclusion that Cranmer does not suffer from arthritis.

When the evidence in the record could lead to more than one rational conclusion, and one is given, the court must uphold the ALJ's conclusion. *Perales*, 402 U.S. at 401. Cranmer's bone density report, arthritis factor, and sedimentation rate thus serve as substantial evidence in support of the ALJ's decision to reject Dr. Lorenzana's functional capacity assessment. *See Gontes v. Astrue*, 913 F. Supp. 2d 913, 924 (C.D. Cal. 2012) (finding that laboratory test results that contradict a treating physician's opinion are substantial evidence for rejecting the treating physician's opinion).  Furthermore, "even if a treating source's medical opinion is well- supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record." (SSR 96-2p). The ALJ's decision to reject Dr. Lorenzana's functional capacity assessment is therefore supported by substantial evidence because Cranmer's laboratory test results contradict Dr. Lorenzana's opinion.

   *ii.    The conclusions of Drs. Cabaluna, Wilson, and Karelitz also contradict Dr. Lorenzana's conclusions regarding Ms. Cranmer's functional capacity*

Second, the findings of consultative examiner Dr. Cabaluna alone serve as substantial evidence supporting the ALJ's decision to reject Dr. Lorenzana's assessment of Cranmer's functional capacity. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a consultative examiner's opinion that is based on the examiner's own independent examination of the patient is substantial evidence for rejecting a conflicting opinion from a treating physician).

9

On April 2, 2010, Cranmer submitted to an independent, comprehensive physical examination conducted by consultative examiner Dr. Cabaluna. (Admin. Rec. at 237). Dr. Cabaluna found "no evidence of . . . paravertebral muscle tenderness or spasms" in Cranmer's back and spine. (Admin. Rec. at 238). Dr. Cabaluna's report indicates that Cranmer is able to flex and extend her spine 80 degrees up and down, and 15 degrees laterally without difficulty. (*Id.*). Dr. Cabaluna also found no evidence of sciatica, and that Cranmer has normal range of motion in her neck, back, and extremities. (*Id.*). Dr. Cabaluna found that Cranmer's hand grasp on her left side is slightly weakened to 4 out of a strength level of 5. (*Id.*). Dr. Cabaluna's report further states that Cranmer showed "no evidence of atrophy or fasciculations," and displayed "normal weight-bearing and normal posture." (*Id.*).

Dr. Cabaluna found that based on Cranmer's physical examination, Cranmer is capable of lifting and/or carrying twenty pounds occasionally, and ten pounds frequently. (Admin. Rec. at 242).  Dr. Cabaluna also found that Cranmer is able to stand and/or walk for six hours, and sit for six hours in an eight hour work day. (*Id.*).

Similarly, the assessments of Drs. Wilson and Karelitz also contradict Dr. Lorenzana's assessment. (Admin. Rec. at 284, 327). After reviewing Cranmer's medical records, Dr. Wilson found "no evidence of a medical condition that would impair handling," and no evidence to suggest that Cranmer has inflammatory arthritis. (Admin. Rec. at 284). Dr. Karelitz's assessment of Cranmer's RFC states that Cranmer is able to lift and/or carry twenty pounds occasionally, lift and/or carry ten pounds frequently. (Admin. Rec. at 237). Dr. Karelitz further found that evidence in Cranmer's medical record indicate that Cranmer is able to stand and/or walk for two hours, and sit for six hours in an eight hour work day. (Admin. Rec. at 327).

"Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Halter*, 242

F.3d at 1149. When looked at in context, the opinions of Drs. Cabaluna, Wilson, and Karelitz, together with Cranmer's medical diagnostic test results constitute substantial evidence within the record to support the ALJ's decision to reject Dr. Lorenzana's findings on Cranmer's functional capacity.

      *iii.*    *Dr. Lorenzana's assessment of Cranmer's functional capacity is not supported by objective medical evidence*

Third, the ALJ properly rejected Dr. Lorenzana's report because Dr. Lorenzana did not support his conclusion with objective medical evidence. "Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." (SSR 96-2p). Dr. Lorenzana diagnosed Ms. Cranmer with rheumatoid arthritis, chronic back pain, and anxiety/panic disorder using an arbitrary checklist form, without supporting his conclusions with "medically acceptable clinical and laboratory diagnostic techniques." (*Id.*). Despite the existence of laboratory and diagnostic test results, Dr. Lorenzana failed to cite or otherwise refer to objective medical evidence in support of his conclusions regarding Cranmer's functional capacity. (Admin. Rec. at 300). Rather, Dr. Lorenzana bases his findings primarily on Cranmer's own subjective descriptions of pain. (*Id.*).

Dr. Lorenzana's functional capacity assessment form is therefore conclusory, and unsupported by evidence within the record. Detailed and individualized medical opinions are preferred over checklist reports. *See Murray v. Heckler,* 722 F.2d 499, 501 (9th Cir.1983) (expressing preference for individualized medical opinions over check-off reports).The ALJ is permitted to reject a treating physician's checklist report if the report is devoid of an objective evidentiary basis for the physician's conclusion. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). Furthermore, "the ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ's decision to reject Dr. Lorenzana's opinion is therefore justified because Dr. Lorenzana failed to support his conclusions with objective evidence, and is contradicted by Cranmer's diagnostic test results, and the reports of Drs. Cabuluna, Wilson, and Karelitz.

*iv.     Cranmer's RFC is not significantly limited by her psychological impairments*

Finally, Cranmer's mental RFC assessment indicates that Cranmer is not significantly limited by her psychological impairments. (Admin. Rec. at 269). The psychiatric evaluation conducted by Dr. Santiago-Lee on December 9, 2009, states that Cranmer's memory is intact, she has "fair insight and judgment," no impulse control problems, and a history of gainful employment. (*Id.*). Though Dr. Santiago-Lee diagnosed Cranmer with panic disorder, post-traumatic stress disorder, and depression, Dr. Santiago-Lee's report states that Cranmer has a Global Assessment of Functioning (GAF) score of 64, which indicates that Cranmer displays only mild symptoms. (Admin. Rec. at 269). Cranmer subsequently met with Dr. Ferrez on January 25, 2010. Dr. Ferrez's treatment notes state that with appropriate medication (Cymbalta, and Xanax), Cranmer's mood is stable, and panic attacks are limited. (Admin. Rec. at 259). Furthermore, Cranmer stated during her visit with Dr. Ferrez that since using Cymbalta as part of her treatment regime, "I feel even keel." (Admin. Rec. at 259).

State agency psychologist Dr. Roldan reviewed Cranmer's medical records and filled out a Mental Residual Functional Capacity Assessment form on March 4, 2010. (Admin. Rec. at 231-33). Dr. Roldan found Cranmer fully capable of remembering and understanding work procedures of a simple nature, interacting appropriately with supervisors and co-workers, and maintaining concentration long enough to maintain an eight hour a day, forty hour a week work schedule. (Admin. Rec. at 233). Furthermore, Dr. Roldan's assessment states that Cranmer is only moderately limited in understanding, remembering, and carrying out detailed instructions, and interacting with the public. (Admin. Rec. at 231-232).

Dr. Ferrez met with Cranmer again on November 16, 2010, for a scheduled mental health follow-up. (Admin. Rec. at 341). Dr. Ferrez's treatment notes state that Cranmer "walks well unassisted," was calm and upbeat, and her "insight is fair." (*Id.*). Cranmer noted that her energy was improved with medication, and that she had "been baking a lot." (*Id.*). Dr. Ferrez assessed Cranmer's GAF score at 63,

supporting Dr. Santiago-Lee's initial assessment that Cranmer displays only mild symptoms of depression, anxiety, PTSD, and OCD. *Id.* On February 15, 2011, Cranmer met with Dr. Patel, also a clinical psychologist. (Admin. Rec. at 335). Dr. Patel's treatment notes are consistent with the opinions of both Drs. Ferrez, and Santiago-Lee. (Admin. Rec. at 269, 335, 341). Dr. Patel assessed Cranmer's GAF score at 65, once again showing only mild symptoms of depression, anxiety, PTSD, and OCD. (*Id.*).

Cranmer's treatment records, and Dr. Roldan's mental RFC assessment serve as substantial evidence supporting the ALJ's decision to disregard any significant limitation due to Cranmer's psychiatric impairments. *See Halter*, 242 F.3d at 1149 (finding that the contrary opinion of a non-examining physician may constitute substantial evidence when it is consistent with other independent evidence in the record). The ALJ therefore properly exercised her discretion in weighing the credibility of Dr. Lorenzana's functional capacity assessment against other substantial evidence in the record. *See* (SSR 96-2p).  The ALJ appropriately resolved the conflicts between conflicting evidence, and supported her conclusions with substantial evidence within the record.

## 2. The ALJ's Finding that Cranmer can perform her past relevant work is supported by substantial evidence within the record

At step four of the five step evaluation process, the ALJ must determine whether a claimant's RFC is sufficient to perform their past relevant work (PRW). 20 C.F.R. § 404.1520(f). The step four analysis "requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her PRW to determine whether the individual can still do that work." (SSR 82-62). "Statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and non-exertional demands of such work." (*Id.*).

In order to determine whether a person can do their PRW the ALJ must carefully appraise (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

Cranmer argues that the ALJ erred in finding that she could perform her past relevant work as a telemarketer. (Doc. #16). This argument is unpersuasive. The ALJ determined that based on Cranmer's RFC she is capable of performing a full range of unskilled sedentary labor. (Admin. Rec. at 32).  The ALJ found that Cranmer is capable of lifting and carrying up to ten pounds occasionally, and less than ten pounds frequently. (Admin. Rec. at 29). Cranmer can also sit for six hours consecutively, and stand/walk for two hours in an eight hour work day. (*Id.*).

Cranmer describes her job duties as a telemarketer as answering "customer service calls," and monitoring "sales floor calls for script violations." Cranmer acknowledges that to conduct this job she was not required to use machines, tools, or equipment, and did not need any technical knowledge or skills. (Admin. Rec. at 176). Cranmer also indicates that to perform her job as a telemarketer she was required to sit for seven hours, required to stand for up to an hour, and not required to walk at all in an eight hour work day. *Id.* Cranmer's description of her job as a telemarketer states that the job did not require any grabbing or reaching, nor any lifting or carrying. When determining whether a claimant can do their PRW "reasonable inferences may be drawn" from evidence within the record. SSR 82-62. Based on Cranmer's own descriptions of her job as a telemarketer, one can reasonably infer that this job qualifies as unskilled sedentary work. Nothing in the record suggests that any of Cranmer's limitations would prevent her from performing her past relevant work as a telemarketer. Therefore, the ALJ's

14

decision to deny Cranmer's disability application at step four of the five step analysis is supported by substantial evidence in the record.

### 3. The ALJ's Credibility Findings are Supported by Substantial Evidence

Finally, Cranmer argues that the ALJ improperly discredited her oral testimony. (Mot. for Reversal (#17) at 17). During the administrative hearing, Cranmer testified that she could only stand or walk for fifteen minutes at a time, and cannot sit for prolonged periods of time without pain and numbness in her back and extremities. (Admin. Rec. at 63, 73). Cranmer also testified that it is hard for her to leave her home due to "a severe fear of being outdoors and around people." (Admin. Rec. at 68). The ALJ discredited Cranmer's testimony because it was inconsistent with (1) Cranmer's activities of daily living, (2) objective medical evidence, and (3) other evidence within the record. (Admin. Rec. at 31).

The ALJ must conduct a two-step analysis when evaluating a claimant's credibility. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged pain. (*Id.* at 1036). Only if the claimant satisfies the first step may the ALJ proceed to the second step. Here, if there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if the ALJ gives "specific, clear and convincing reasons." (*Id.*). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *see also* 20 C.F.R. §§ 404.1529(c); 416.929(c) (listing credibility factors). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's

testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir. 1995) (citing *Brunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).

The ALJ's decision satisfies this standard. The ALJ highlighted three specific inconsistencies between Cranmer's testimony and the administrative record. (Doc. #21 at 19, Admin. Rec. 29-32). The ALJ discussed in detail each inconsistency by first, identifying the inconsistency, and second, providing clear and convincing reasons justifying the ALJ's conclusion that an inconsistency was, in fact, present in the record. (Admin. Rec. at 29-32). The court, therefore, concludes that the ALJ's decision is "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza*, 50 F.3d at 750. Each inconsistency is discussed below.

First, the ALJ found that Cranmer's testimony was inconsistent with her activities of daily living. The court concludes that the ALJ supported this finding with clear and convincing reasons because the ALJ noted numerous specific contradictions between Cranmer's testimony and her daily activities. The ALJ noted that while Cranmer testified she cannot stand long enough to cook, and that her husband did all the cooking, she also testified that she cooks, makes her bed, and goes shopping. (Admin. Rec. at 66). Cranmer also reported to her psychiatrist that she had been doing a lot of baking. (Admin. Rec. at 341). Cranmer claims that she can only stand or walk for fifteen minutes at a time, however, she also testified that she goes grocery shopping uses public transportation. (Admin. Rec. at 63, 66). Cranmer testified that she has a severe fear of being outside and around people, yet she was able to attend her daughter's wedding, and go to the grocery store using public transportation. (*Id.*). Cranmer's daily activities contradict her testimony regarding the severity of her symptoms. The court must, therefore, uphold the ALJ's decision regarding Cranmer's credibility because it is rooted in the record and a reasonable mind might accept that the record is contradictory. *See Orteza*, 50 F.3d at 750.

Second, the ALJ found that Cranmer's testimony was inconsistent with the objective medical evidence. (*See* Admin. Rec. at 29-34). The court agrees. The ALJ's decision is supported by clear and convincing evidence because the ALJ properly noted the contradiction between Cranmer's testimony and the objective medical evidence. For instance, Cranmer claims she is disabled because of rheumatoid arthritis and chronic back pain, yet her bone density, rheumatoid arthritis factor, and sedimentation tests produced negative results. (Admin. Rec. at 283, 298). Furthermore, the opinions of Drs. Cabaluna, Wilson, and Karelitz all contradict Cranmer's claims of severe symptoms. The psychological evaluations conducted by Drs. Ferrez, Patel, and Santiago-Lee similarly contradict her testimony regarding severe symptoms of anxiety and depression. (Admin. Rec. at 63). This inconsistency satisfies the clear and convincing evidence standard because it demonstrates that the ALJ's decision is rooted in the record and not arbitrary or capricious. *See Orteza*, 50 F.3d at 750.

Third, the ALJ found that Cranmer's testimony regarding severe debilitating symptoms was inconsistent with other evidence in the record. (Admin. Rec. at 31). The court concludes that the ALJ supported this finding with clear and convincing reasons because the ALJ articulated clear contradictions between Cranmer's testimony of severe psychological impairments that prevent her from going outside and being around people, and the psychological examinations conducted by Drs. Santiago-Lee, Farrez, and Patel. Cranmer's psychological examinations consistently indicated only mild symptoms of depression, anxiety, and PTSD, yet she testifies that she suffers from "a severe fear of being outdoors and around people." (Admin. Rec. at 68). All three of Cranmer's psychological examiners reported only mild symptoms, and each indicated that with appropriate medication, Cranmer was calm, and stable. (Admin. Rec. at 259, 335, 341). This satisfies the clear and convincing reasons standard because it demonstrates that the ALJ's decision is rooted in the record and not arbitrary or capricious. *See Orteza*, 50 F.3d at 750.

1        ACCORDINGLY, and for good cause shown,

2        IT IS RECOMMENDED that the Plaintiff Cynthia L. Cranmer's Motion for Reversal (#16) be

3   DENIED.

4        IT IS FURTHER RECOMMENDED that the Defendant Carolyn W. Colvin's Motion to Affirm

5   (#21) be GRANTED.

6        IT IS SO RECOMMENDED.

7        DATED this 21st day of March, 2014.

8                                                         CAM FERENBACH
9                                                         UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25